### In re FERGUSON CONTRACTING CO.

#### Ex parte VULCAN IRON WORKS.

#### (District Court, S. D. New York. December 27, 1910.)

BANKRUPTCY (§ 184*)—CONDITIONAL SALES—"RAILROAD EQUIPMENT"—"ROLL-
ING STOCK"—PERSONAL PROPERTY LAW—"RAILROAD"—REGISTRATION.

Personal Property Law N. Y. (Consol. Laws, c. 41) § 61, provides that, whenever any railroad equipment and rolling stock shall be sold, leased, or loaned under a contract which provides that the title shall remain in the vendor, lessor, or bailor until the price is paid, such contract shall be invalid as to any subsequent judgment creditor of or purchaser from such vendee, lessee, or bailee for a valuable consideration without notice, unless the contract is in writing, fully acknowledged, and recorded in the book in which real estate mortgages are recorded in the office of the county clerk or register of the county in which is located the principal office or place of business of the vendee, lessee, or bailee, unless there is plainly marked on both sides of the locomotive or car the name of the vendor, lessor, or bailor, followed by the words "lessor," "bailor," or "vendor," as the case may be. Held, that the words "railroad equipment" and "rolling stock," as used in such section, were equivalent to the words "rolling stock used on a railroad," and since the term "railroad" signifies a common carrier or association engaged in hauling passengers and freight for hire, excluding logging roads, construction roads, etc., such section had no application to locomotives only fit for use on temporary construction railroads, used in connection with work of internal improvement, and hence conditional sales of such locomotives were valid as against the trustee in bankruptcy of the conditional vendee, though not recorded.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 184.*

For other definitions, see Words and Phrases, vol. 7, pp. 5899–5908; vol. 8, pp. 7777–7778; vol. 7, p. 6266.]

In the matter of bankruptcy proceedings of the Ferguson Contracting Company. On petition of the Vulcan Iron Works to recover from the receiver in bankruptcy certain locomotives leased to the bankrupt under a contract of conditional sale. Petition granted.

Petition of the Vulcan Iron Works in reclamation proceedings to recover from the receiver in bankruptcy of the Ferguson Contracting Company three

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

locomotives leased to the bankrupt under conditional bills of sale and not wholly paid for at the time of the filing of the petition in bankruptcy. The receiver contends that section 61 of the personal property law of New York (Consol. Laws, c. 41) provides that all conditional bills of sale covering "railroad equipment and rolling stock," unless recorded in the register's office shall be void as against judgment creditors, and that he is entitled to retain the locomotives for the reason that under section 47 of the bankruptcy act (Act July 1, 1898, c. 541, 30 Stat. 557 [U. S. Comp. St. 1901, p. 3438]), a trustee in bankruptcy stands in the same position as a judgment creditor. The petitioner contends that the three locomotives in question do not come within the definition of "railroad equipment and rolling stock" as intended by the foregoing statute, for the reason that the bankrupt was not a common carrier of passengers or freight, or engaged in the railroad business, and for the further reason that the locomotives are not suitable for use upon a railroad, but only for contracting purposes.

Colby & Goldbeck (William F. Goldbeck and John Kochendorfer, of counsel), for petitioner.

Robert Hibbard, for receiver.

HAND, District Judge (after stating the facts as above). The act upon which the receiver relies, which is now section 61 of the personal property law, first appeared in 1883 in substantially the same form as now, in chapter 383, Laws of 1883. Its history does not in itself, therefore, help in its interpretation, though it is unusual, not only because it invalidates a conditional sale as against judgment creditors, unlike the general law of the state of New York, which protects only bona fide purchasers, but also because the instrument is to be recorded as a real estate mortgage. It had originally been held by the Supreme Court of New York that mortgages of a railroad covering rolling stock need not be filed as chattel mortgages; but this was overruled by the Commission of Appeals in Hoyle v. Plattsburgh & Montreal R. R. Co., 54 N. Y. 314, 13 Am. Rep. 595. That was in 1873, and meanwhile, by chapter 779 of the Laws of 1868, the recording act had itself been changed to provide that it should be enough to record a mortgage of a railroad and its rolling stock once as a real estate mortgage, without filing it also as a chattel mortgage. Moreover, prior to 1883 the question had arisen between the conditional vendors of railroad rolling stock and bondholders under a mortgage with after-acquired property clauses. The conditional vendors had succeeded against the bondholders, who were held to be in no better position than general creditors. Fosdick v. Schall, 99 U. S. 235, 25 L. Ed. 339 (1878).

These two considerations seem to have been adequate ground for the enactment of this statute: First, because railway mortgages of rolling stock were already recorded as real estate mortgages; second, because bondholders with after-acquired property clauses could not protect themselves against secret vendors' liens upon new rolling stock necessarily substituted when the old stock wore out. While, of course, no one can say certainly that this was in fact what the statute meant, still it would seem as if there must have been some such reason for putting "railroad equipment and rolling stock" in a different position from other chattels conditionally sold. Now, if this be the explanation, the statute did not intend to cover chattels which were used upon a mere temporary road of rails, having none of the characteristics in

law of a common carrier, because none of the considerations mentioned had arisen in regard to such "equipment and rolling stock."

However, it is not necessary to this construction that the supposition mentioned be correct. Even if literally construed, the words ought not to include such chattels as these. Not every pair of rails laid on ties is a railroad. Gibbs v. Drew, 16 Fla. 147, 26 Am. Rep. 700. It would be extreme to construe the words in that way. "Railroad equipment and rolling stock" is equivalent to rolling stock used on a railroad. It is absurd to speak of these contractors' locomotives, incapable of any use whatsoever upon the usual railroad, as "rolling stock" of a "railroad." It would be as unreasonable to call a "roadbed" the temporary rails and ties of a contractor, which is put down to-day and taken up next week. The phrase "equipment and rolling stock" by implication infers a distinction between that and some permanent roadbed or way, which is capable of separate transfer, and is recognized as the more substantial part of the railroad. No such distinction is possible in the case at bar.

In common speech a railroad is a common carrier, an association of men who engage in the business of hauling passengers and freight. Thus the logging road used by a logging company is not a railroad. Ellington v. Beaver Dam Lumber Co., 93 Ga. 53, 19 S. E. 21; McKivergan v. Alexander, 124 Wis. 60, 102 N. W. 332. Nor is a road of rails used in the construction of a real railroad. Beeson v. Busenbark, 44 Kan. 669, 25 Pac. 48, 10 L. R. A. 839. Nor a construction train. Griggs v. Houston, 104 U. S. 553, 26 L. Ed. 840.

Thus not only the natural meaning of the words, but the only discernible purpose of the act, both join in suggesting the interpretation of the petitioner, and his prayer is granted.