KILPATRICK ET AL VS CHOCTAW, OKLAHOMA & GULF
RAILROAD COMPANY.

Opinion delivered October 5, 1901.

*1. Master and Servant—Negligence—Using Unblocked Frogs, not Negligence—Directed Verdict.*

> In a suit to recover damages for the death of an employee, the sole issue was whether or not the use of unblocked frogs by the railroad company was negligence. A number of witnesses testified that an unblocked is not more dangerous than a blocked frog, and evidence established the fact that most railroads use unblocked frogs, and some have changed from blocked to unblocked, deeming the latter plan safer. *Held*, that no negligence was established, and the court properly directed a verdict for defendant.

Appeal from the United States court for the Central district.

WILLIAM H. H. CLAYTON, Judge.

Action by Minnie Kilpatrick and others against the Choctaw, Oklahoma & Gulf Railroad Company. Judgment for defendant. Plaintiffs appeal. Affirmed.

This was an action brought by the appellants (plaintiffs below) against the appellee (defendant below) for damages for the killing of R. E. Kilpatrick, husband of the plaintiff Minnie Kilpatrick. Plaintiffs allege in their amended complaint filed September 30, 1898, that the said R. E. Kilpatrick was in the employ of the appellee as a brakeman on one of its freight trains, and while in the act of uncoupling a car in the railroad yards in the town of Shawnee,

Okl. T., on February 13, 1897, his foot got caught between the guard rail and main rail of the track. At the time the train was moving slowly, and he was between the cars, with his right hand holding onto the car in front of him, and with his left hand endeavoring to remove the pin to uncouple the cars; and when his foot got thus caught he tried to extricate it, and, being unable to do so, the car ran onto his leg, threw him down on his face, and passed on to his body, crushing him, from the effects of which he died inside of a half hour. ''Plaintiff respectfully alleges that said guard rail was laid and constructed at a point in defendant's track where said deceased, Kilpatrick, and other employees of the defendant were compelled to work in coupling and uncoupling defendant's cars in discharge of their duties as brakemen; that it was a wrongful and negligent act of defendant to so construct the same at said point under the aforesaid circumstances; that it was likewise a grossly negligent omission of duty on the part of defendant towards its said employees, after having so wrongfully and negligently constructed said guard rail at said point, not to have blocked the said open space leading from each end of said guard rail into the narrow space between said guard rail and the main rail of the track, and that it was likewise a wrongful and negligent act, as well as a wrongful and negligent omission of the duty that defendant owed to said deceased and its other employees, to permit the coupling links, pins, and means and attachments used for coupling and uncoupling said cars as above-alleged to become broken, defective, and out of repair, and in permitting them to remain in said condition.'' Plaintiffs ask for damages in the sum of $10,000. Defendant filed its answer January 18, 1899, denying every material allegation of plaintiffs' complaint, and for special answer says ''that R. E. Kilpatrick came to his death through his own want of care and through his contributory negligence; that said Kilpatrick had long been in the service of this defendant, and was thoroughly familiar

with the coupling and uncoupling of its cars and with the construction of its couplers, and was thoroughly familiar with the manner in which its track was laid at the point where the accident occurred; that the coupler between the two cars sought to be uncoupled by Kilpatrick was an automatic coupler, and it was not necessary, in order properly to work the same, for said Kilpatrick to go between the cars; that, if there was a defect in this automatic coupler, the said Kilpatrick knew it, and had known it for some time, and made no complaint or protest, and had no right to enter between the cars, knowing such defect. The defendant says further that the track which was laid and constructed at the place of the accident was laid and constructed in a careful and scientific manner, and in such manner as to insure the safety of careful and prudent employees; that it was constructed in the same manner that tracks of that kind are constructed by the best operated and regulated roads in the country; and that the injury resulting to the deceased was not due, therefore, to any defect in the coupling between the cars, nor to any defect in the laying or construction of the track at the point where the accident occurred, but to the gross and inexcusable negligence of the deceased himself." The suit was instituted at South McAlester, in the Central district, and on application of defendant the venue was changed to Ato'ka, in said Central district, where the case was tried September 26, 1899, before a jury, as follows "Whereupon plaintiffs introduced their testimony, and the defendant its testimony, and the plaintiffs their testimony in rebuttal, whereupon said case was closed. Thereupon at the request of the defendant the jury was instructed to return a verdict in favor of the defendant, to which action of the court the plaintiff duly excepted. And thereupon the jury return into open court the following verdict: 'We, the jury, duly impaneled and sworn in the above-entitled action, find the issues herein for the defendant.' " Plaintiffs moved for a new trial, which was

overruled by the court, and they appealed to this court. The·plaintiffs in their complaint had alleged that "it was a wrongful and negligent act, as well as a wrongful and negligent omission of the duty of defendant, to permit the coupling links, pins, and means and attachments used for coupling and uncoupling said cars to become broken, defective, and out of repair, and in permitting them to remain in said condition." The defendant in its special answer said Kilpatrick had come to his death "through his own want of care and through his contributory negligence," and "that the injury resulting to the deceased was not due to any defect in the coupling between the cars, nor to any defect in the laying or construction of the track, * * * but to the gross and inexcusable negligence of the deceased himself." But by agreement the whole issue in the case was limited as follows: "It was here admitted by defendant that on the occasion when the deceased, Kilpatrick, was killed, the coupling attachments on the cars between which Kilpatrick was at the time he was killed were broken and out of repair, and had been for a long time, and that it was necessary and rightful for deceased to enter between said cars for the purpose of uncoupling them, and that he was rightfully there at the time of his death. When the defendant made the above admis-. sion, plaintiffs, through their counsel, stated that the failure to block frogs in defendant's track was the proximate cause of the deceased Kilpatrick's injury, and that plaintiffs would rely upon the failure of the defendant to block frogs as the sole ground of recovery in the cause; and it was further admitted that the fact that the couplings between the cars where Kilpatrick was injured were broken and out of repair should not be considered by the jury as negligence on the part of the defendant, and that the court should submit to the jury, if he did submit the case, the sole question as to whether or not the failure to block its frogs was an act of negligence on the part of the defendant."

*W. E. Rogers*, *W. O. Davis*, and *J. H. Garnett*, for appellant.

*C. B. Stuart* for appellee.

TOWNSEND, C. J.   The appellants have filed 10 specifications of error, but the agreement entered into between the parties at the trial in the court below reduced the question at issue as to defendant's negligence to very narrow limits.   Said issue is as follows: "It was agreed by the parties in open court that the court should submit to the jury, if he did submit the case, the sole question as to whether or not the failure to block its frogs was an act of negligence on the part of the defendant."   This was the only question, undoubtedly, that the court below considered in arriving at the conclusion from the evidence not to submit the case to the jury.   It is a well settled rule that when, in the opinion of the trial judge, the evidence is not sufficient to sustain a verdict, and the court would be compelled to set the verdict aside, should one be returned by the jury, it is the duty of the court to take the case from the jury or direct a verdict.   We have examined the evidence with same care, as set out in the bill of exceptions, to ascertain if the court below in directing a verdict acted in accordance with the foregoing rule; and we are satisfied, beyond question, that the evidence, taken as a whole, does not establish that the appellee was negligent in not blocking its frogs. Not only was the preponderance of the evidence opposed to that view, but the great weight of the testimony was in opposition to that view.   We deem it unnecessary to enter into the discussion, so much insisted upon by appellants, that a brakeman on a railroad train is more likely to tell the truth than a chief engineer, superintendent or vice president of a railroad.   Suffice it to say that none of the witnesses are impeached in this case.   The evidence clearly shows that a large majority of the railroads in the United States use the unblocked frog, and, while two or

three witnesses in this case testify that to use an unblocked frog is dangerous, the larger number testify that the unblocked frog is not more dangerous than the blocked frog, and some of them testify that the blocked frog is the more dangerous. Besides, it appears from the testimony that some railroads that did use the blocked frog have abandoned it for the unblocked, notably the Texas Pacific and the Gulf, Colorado & Santa Fe railways, for the reason that the former was the more dangerous of the two. This is substantially the disputed state of facts, as appears from the evidence in this case. In Southern Pac. Co. vs Seeley, 152 U. S. 145, 14 Sup. Ct. 530, 38 L. Ed. 391, where the identical question was developed in the evidence, and the defendant had requested the court to give the following instruction to the jury: "The jury are instructed that if they find from the evidence that the railroad companies used both the blocked and the unblocked frog, and that it is questionable which is the safest or most suitable for the business of the roads, then the use of the unblocked frog is not negligence, and the jury are instructed not to impute the same as negligence to the defendant, and they should find for the defendant,"—Judge Shiras, of the United States supreme court, says this instruction should have been given; and the judge cites a number of cases holding the same views, and quotes Judge Bradley, in Tuttle vs Railway Co., 122 U. S. 189, 7 Sup. Ct. 1166, 30 L. Ed. 1114, as sustaining the same view, as follows: "Although it appears that the curve was a very sharp one at the place where the accident happened yet we do not think that public policy requires the courts to lay down any rule of law to restrict a railroad company as to the curves it should use in its freight depots and yards where the safety of passengers and the public is not involved,—much less, that it should be left to the varying and uncertain opinion of jurors to determine such an engineering question." Id., 122 U. S. 189, 194, 7 Sup. Ct. 1168, 30 L. Ed. 1116. And, after discussing the question at length

as to whether the use of an unblocked frog made the defendant liable for negligence, Judge Shiras says: "In view of this case and many others of similar import, which it is unnecessary to cite, we think it plain that the defendant was entitled not merely to the instruction prayed for, if the case went to the jury, but that upon the whole evidence the prayer for a peremptory instruction in the defendant's favor ought to have been granted." This practically settles the question in this case in favor of the action of the court below, and, while many cases are cited by appellant, we cannot concur in the following view of the appellants: That "the court before whom the case at bar was tried committed a judicial wrong, abused his judicial discretion, in taking the case from the jury upon the appellee's motion, and thereby committed such error of law as renders it the duty of this court to reverse and remand this cause." But we think that "the conclusion follows, as a matter of law, that no recovery can be had upon any view which can be properly taken of the facts the evidence tends to establish." Dunlap vs Railroad Co., 130 U. S. 649, 9 Sup. Ct. 648, 32 L. Ed. 1059. The appellee has also cited authorities taking the same view of the question as the Seeley Case, but, as heretofore stated, the Seeley Case is in our opinion, conclusive of the question and therefore the judgment of the court below is affirmed.

GILL and RAYMOND, JJ., concur.